409 P.2d 86

Charles E. GOETZ, Appellant,

v.

James B. PHILLIPS and Russ Lyon, Jr., Appellees.

No. 1 CA–CIV 105.

Court of Appeals of Arizona.

Dec. 22, 1965.

Rehearing Denied Jan. 31, 1966.

Review Denied Feb. 23, 1966.

---

3. As for instance, when an operation is performed under certain emergency conditions. See Restatement, Second, Torts § 62.

Kramer, Roche, Burch & Streich, by Charles L. Hardy, Phoenix, for appellant.

Tanner, Jarvis & Owens, by Robert F. Owens and Jarrett Jarvis, Phoenix, for appellees.

CAMERON, Judge.

This is an appeal from a summary judgment granted upon motion of the plaintiffs below, appellees herein, foreclosing a mortgage against the defendant below. From the judgment, defendant brings this appeal. The plaintiffs are the assignees of a partnership composed of A. T. LaPrade, Jr., James B. Phillips and Russ Lyon, Jr., and will be hereinafter referred to as the partnership. The defendant, Charles E. Goetz, will be hereinafter referred to as Goetz.

We are called upon to determine whether an interest obtained by the partnership in a note was a sale or a loan, and if a loan, whether Goetz may raise the issue of usury as a defense.

Prior to 14 April, 1960, Charles E. Goetz owned some six parcels of land in Maricopa County totaling approximately 632 acres. On 14 April, 1960, Goetz sold this property to South Phoenix Properties, Inc., under a "subdivision" trust placed with Lane Title and Trust Company (later Union Title Company). This was trust number 635, and the first beneficiary was Goetz and the second beneficiary was South Phoenix Properties, Inc. The sales price was $1,350,000.00, later reduced to $1,030,000.00. Out of this trust a second trust (number 636) was created and after a series of involved financial transactions and sale of some of the property, the second trust (number 636) was cancelled.

By December, 1962, the following financial situation emerged. Goetz was the owner of a first beneficial interest in trust number 635. There were approximately 450 acres remaining in the trust, and the amount of $650,000.00 was still owed to Goetz. Yumac Land, Ltd., had purchased the second beneficial interest in trust number 635 from Imperial Western, Inc., for $100,000.00 and a note in the amount of $970,000.00. Yumac assigned this second beneficial interest back to Imperial Western as security for the payment of the note.

At that time, A. J. Nicoli, President of Imperial Western, Inc., and the partnership, entered into negotiations wherein the partnership was to obtain a $300,000.00 interest in the $970,000.00 promissory note from Yumac Land, Ltd. The partnership refused to go through with this transaction, unless

Goetz subordinated his interest in the property to a first mortgage to be placed upon the property to secure the payment of the $300,000.00 portion of the Yumac note.

A. J. Nicoli, President of Imperial Western, Inc., contacted Goetz, and Goetz, in consideration of the amount of $100,000.00, agreed to subordinate his first beneficial interest in trust number 635 to a first mortgage not to exceed $300,000.00. At that time, there was due and owing to Goetz, a payment in the amount of $25,000.00 on the sale of the property. Goetz also held notes for $15,000.00 and $10,000.00 from Imperial Western, so that at least $50,000.00 of the $100,000.00 Goetz was to receive was an acceleration of sums which would be due to him by reason of trust number 635. Goetz signed the requested subordination stating:

"Anticipation of said principal installments is one of the considerations for subordination herein granted."

The subordination also instructed Union Title Company, the trustee as follows:

"You are instructed and permitted to deed out said property to Yumac Land, Ltd. for the sole purpose of their executing a first mortgage thereon in favor of LaPrade, Phillips and Lyon, a partnership, as mortgagees, which mortgage shall secure the obligation of the mortgagor as follows:

"The just and full sum of $300,000 and no one-hundredths dollars as principal payment according to the terms and conditions of that certain promissory note bearing interest at the rate of 4% per annum dated December, 1962, made by Yumac Land, Ltd., and payable to the order of Imperial Western Company, a Nevada corporation, which note has been endorsed and delivered to mortgagee, and shall pay in addition all interest accrued under said note from the date thereof to the date of full payment of said $300,000.00 principal payment and the said interest."

The property was then deeded to Yumac Land, Ltd., for the purpose of executing the first mortgage. The partnership paid to Imperial Western, $256,000.00, evidenced by an agreement of 4 April, 1963, and Imperial Western, Inc., endorsed the first $300,000.00 principal of the Yumac note to the partnership without recourse.

Yumac Land, Ltd., made no payments under their note, and the partnership sued Yumac Land, Ltd., and the appellant Goetz to foreclose the $300,000.00 mortgage. Goetz answered and alleged as a defense, that the sale was, in fact, a loan and was intended by the partnership and Imperial Western to conceal said fact, and that the loan was usurious.

The partnership moved for summary judgment, and the court found that there were no genuine issues of any material fact, and that plaintiffs were entitled to judgment as a matter of law against the defendants. The mortgage lien against the property in question was foreclosed, and the plaintiffs were adjudged to have a valid and subsisting lien upon the property in the amount of $434,543.08. In addition to the principal amount of $300,000.00, plus court costs, the amount included $43,650.00 as interest at 4% on the principal amount of the Yumac note (of $970,000.00), $60,819.03 as interest on the combined principal and accrued interest at 8% from date of default until date of judgment, and attorney's fees in the amount of $30,000.00.

■ Appellant Goetz appeals, claiming that there was a genuine issue of fact, therefore the moving party was not entitled to summary judgment as prescribed in Rule 56(c), Rules of Civil Procedure, 16 A.R.S. It is clear that summary judgment should never be entered unless the facts are clear and undisputed. Colby v. Bank of Douglas, 91 Ariz. 85, 370 P.2d 56 (1962), Lujan v. MacMurtrie, 94 Ariz. 273, 383 P.2d 187 (1963), and summary judgment should not be granted if, upon an examination of the entire record, it is determined that there is a disputed fact which, if true, could affect the final judgment. Sarti v. Udall, 91 Ariz. 24, 369 P.2d 92 (1962).

The appellant contends that to have granted summary judgment, the Superior Court necessarily must have found that the record established as a matter of law, one of the following: (1) the transaction between the partnership and Imperial Western was a sale and not a loan, (2) even though a loan, it was not at a usurious rate of interest, (3) Goetz had no standing to set up usury as a defense.

We will first discuss whether the record establishes as a matter of law that the transaction between the partnership and Imperial Western was a sale and not a·loan. If the transaction is in fact a sale, Goetz may not then assert a defense of usury under the facts in this case. The following is a generally accepted definition of a sale as distinguished from a loan:

"A sale is the transfer of the property in a thing for a price in money. The transfer of the property in the thing sold for a price is the essence of the transaction. The transfer is that of the general or absolute interest in property as distinguished from a special property interest. A loan, on the other hand, is the delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional sum agreed upon for its use." Milana v. Credit Discount Company, 27 Cal.2d 335, 163 P.2d 869, at 871, 165 A.L.R. 621 (1945).

The purchase price paid by the partnership was arrived at through an arm's length transaction and was related to the value of the land securing payment of the note purchased. There is no claim that the Yumac note was usurious on its face or in its inception. The partnership took the assignment of a fractional interest in the note without notice of any defects or defenses and were, in fact, holders in due course. The note being assigned without recourse, the seller, Imperial Western, was not liable for the repayment of the sums paid by the partnership. In the event of default on the note, the partnership's only recourse was to look to Yumac and the security. The security required by the partnership at the time of the sale was not as a security for the sale but was as security for the existing Yumac note which the partnership purchased.

"It is well-known law that an investor may purchase choses in action from the holder at any discount the parties may agree upon; 'and this is true even when the purchase is made at the request of the debtor, who, to induce such purchase, agrees to secure by mortgage the amount actually due, or pays a bonus or gratuity, or pays the creditor the amount of the discount, either with or without the knowledge of the purchaser'." Gibson v. Alexander, 231 Ala. 77, 163 So. 601 at 603 (1935).

Once a note has been validly issued or negotiated for valuable consideration, it becomes an article of commerce and can be sold as freely as any other property, the rate of discount being governed by its market value, and the percentage of profit has no relation to the usury law. Harris v. Pollack, 101 Cal.App.2d 26, 224 P.2d 824 (1950). The giving or requiring of additional security at the time of the sale of the note does not render the transaction usurious:

"In the instant case the Buhlers were not bound to repurchase the contract nor were they given such right, nor is any such claim made by them. The record of the entire transaction indicates that the Hallstroms refused to purchase the contract even at the discount offered unless the performance of the conditions of the contract by third parties was guaranteed to their satisfaction. The mortgage foreclosed herein guaranteeing such performance was given by the Buhlers to induce the purchase by the Hallstroms of the contract.

"The only reasonable interpretation of the transaction as evidenced by the written documents, pleadings and pretrial order based on the discussion between the court and counsel was that it

was a sale and not a loan. This is so because no right was given to the sellers to regain the property sold upon payment of any given amount as there would be if the transaction were one to cover up a usurious loan secured by the property purportedly sold. The court therefore did not err in granting the motion for the summary judgment." Hallstrom v. Buhler, 14 Utah 2d 111, 378 P.2d 355 at 357 (1963).

After reading the pleadings and the deposition of Goetz as well as the other depositions, it is our opinion that there is no genuine issue of fact concerning whether or not this transaction was a sale or a loan. The facts are clear and undisputed. Imperial Western sold its interest in the Yumac note at a discount, and without recourse. There was no obligation on the part of Imperial Western to repay this amount to the partnership. Yumac Land, Ltd. was merely required to pay the amount which had always been due, but in this instance the first $300,000.00 in principal and the interest on the entire note, had been assigned to the partnership. The Yumac note itself was not usurious and Yumac did not defend. Goetz, for a consideration of at least $50,000.00 agreed to subordinate his prior position in the trust (number 365) to a first mortgage in the amount of $300,000.00. He was not compelled to do this, but he did so for a consideration. Although Goetz never met or discussed the matter with the partnership until after the subordination, still by his actions Goetz caused the partnership to rely upon this mortgage in making the purchase from Imperial Western, and Goetz cannot complain when the Yumac note becomes due and the partnership looks to the mortgage as security for the payment of the note.

The partnership, in good faith, paid $256,000.00 to purchase an interest in a note secured by a mortgage. They took the risk that the land in question would be sufficient security for the note they were purchasing, and they took the risk that the note would not be paid, which, in fact, it was not, and

that they were actually purchasing a law suit. The fact that they may now realize more on their investment than the legal rate of interest, does not make their purchase illegal or usurious, and Goetz, having assisted in this purchase by reason of his subordination, for which he received a consideration, is in no position to raise this defense—the defense of usury, at this time.

Having determined that the transaction was, in fact, a sale and not a loan, we need not consider the other questions raised by the appellant Goetz.

The judgment is affirmed.

STEVENS, C. J., and DONOFRIO, J., concur.